## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **NELSON TORRES-DELGADO,** | **CIVIL ACTION NO.: 25-1054** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, AND PUNITIVE DAMAGES** |
| **1) ANGEL LUIS ADAN, WARDEN, THE MDC GUAYNABO; 2) LEWIS HOWARD, ASSOCIATE WARDEN, OPERATIONS, THE MDC GUAYNABO; 3) FRANCES RIVERA, ASSOCIATE WARDEN, PROGRAMS, THE MDC GUAYNABO; 4) JOSEAN NIEVES,CORRECTIONAL SERVICES SUPERVISOR, THE MDC GUAYNABO; 5) FNU/OJEDA, SHU LIEUTENANT, THE MDC GUAYNABO; 6)FNU/LNU ACTIVITIES LIEUTENANT, THE MDC GUAYNABO; 7) FNU/LNU, LT. OPERATIONS, THE MDC GUAYNABO; 8) FNU/LNU, SHU CORRECTIONAL OFFICER ONE THROUGH SIX; 9) OTHER UNKONWN BUREAU OF PRISONS OFFICIALS. Defendants.** | **JURY TRIAL REQUESTED** |

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, AND PUNITIVE DAMAGES

### I.  INTRODUCTION

1. Plaintiff Nelson Torres-Delgado, a Puerto Rican citizen and federal inmate, brings this action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1985, 52 U.S.C. § 20510, and the First, Fifth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

2. Plaintiff alleges that Defendants acted individually and collectively to conspire and systematically deprive him and similarly situated SHU inmates of their constitutional right to vote in the November 3, 2024, Puerto Rican gubernatorial election. This was done through willful obstruction, deliberate inaction, misinformation, and direct refusal to implement lawful voting procedures in clear violation of federal and Puerto Rican law.

3. This action seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and other equitable remedies to address the irreparable harm caused by Defendants' intentional violations.

4. Defendants' conduct constitutes a deliberate and coordinated conspiracy to obstruct the democratic rights of Plaintiff and similarly situated SHU inmates, resulting in a systemic pattern of disenfranchisement and constitutional violations.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331, as the claims arise under the Constitution and laws of the United States, including violations of the First, Fifth, Fourteenth, and Fifteenth Amendments, 28 U.S.C. § 1343 (Civil Rights and Elective Franchise), 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights), 52 U.S.C. § 20510 (Voting Rights Act).

6. This Court further has supplemental jurisdiction over the state law claims alleged in this action pursuant to 28 U.S.C. § 1367(a), because these claims are so intimately related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, these supplemental claims arise out of the same nexus of facts and events as the federal claims and involve violations of Plaintiff's rights under both federal and Commonwealth of Puerto Rico law.

7. Plaintiff also invokes the supplemental jurisdiction of this Court to hear and adjudicate claims arising under the laws of the Commonwealth of Puerto Rico, including, but not limited to, statutory claims regarding voting rights and governmental accountability. These state law claims are directly related to and interwoven with the federal claims presented in this action, forming a unified case or controversy under Article III of the United States Constitution.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the causes of action arose from incidents and events occurring within the Commonwealth of Puerto Rico, which lies within the jurisdiction of the United States District Court for the District of Puerto Rico. Furthermore, venue is invoked pursuant to 28 U.S.C. § 1391(e)(1) because many of the Defendants in this civil action are employees or agents of the United States government who were acting under the color of legal authority at the time the constitutional violations accrued, and a substantial part of the events or omissions giving rise to the claims occurred within this jurisdiction.

9.  Plaintiff asserts his right to a trial by jury under the Seventh Amendment to the United States Constitution, as this action involves violations of his civil rights and claims for compensatory and punitive damages.

## III.  <u>PARTIES AND PARTICIPANTS</u>

A.  **Plaintiff:**

10. **Nelson Torres Delgado,** Plaintiff is a United States citizen and resident of Puerto Rico. At all relevant times, Plaintiff was an inmate confined in the Special Housing Unit (SHU) at the Metropolitan Detention Center (MDC) Guaynabo. Plaintiff was eligible to vote in the Puerto Rican gubernatorial election on November 3, 2024. Plaintiff was unlawfully denied his right to vote due to Defendants' actions, omissions, and

conspiracy to obstruct his voting rights. Plaintiff brings this action on behalf of himself and similarly situated inmates.

**B.  Defendants:**

**11.  Defendant Angel Luis Adan, Warden,** (hereinafter, Defendant Warden Adan) is and was at all times relevant herein a resident of Puerto Rico, employed by the Federal Bureau of Prisons ("FBOP") as Warden of MDC Guaynabo in Puerto Rico. As Warden, he held ultimate authority and responsibility for the facility's program enforcement, daily operations, administration, and policy implementation. Defendant Warden Adan was tasked with ensuring that all institutional programs and activities, including voting processes, complied with federal constitutional and statutory mandates. Defendant Warden Adan was fully informed by the Puerto Rico State Election Commission (CEE) of the legal obligation to ensure that all inmates, including those in the SHU, were allowed to register and cast their votes during the November 3, 2024, gubernatorial election. Despite this, Defendant Warden Adan knowingly and intentionally decided to deny Plaintiff and other SHU inmates the opportunity to vote. Defendant's willful actions in impeding the Plaintiff and similarly situated inmates in SHU housing from exercising their right to vote constituted a direct violation of their constitutional and statutory

rights. Defendant Warden Adan's deliberate failure to implement and enforce voting protocols, supervise staff compliance, and act on his assurances to the Election Commission ensured the disenfranchisement of SHU inmates, including Plaintiff. Defendant Warden Adan is sued in both his **official** and **individual capacities** for his supervisory failures, negligence, and deliberate participation in a conspiracy to deprive Plaintiff of his voting rights.

12.    **Defendant Lewis Howard, Associate Warden Operations**, (hereinafter Defendant AW Howard), is and was at all times relevant herein a resident of Puerto Rico, employed by the Federal FBOP as Associate Warden Operations at MDC Guaynabo in Puerto Rico. As the Associate Warden Operations, Defendant AW Howard was responsible for overseeing the day-to-day operational functions of MDC Guaynabo and ensuring compliance with institutional policies, including voting rights enforcement. Defendant AW Howard participated in meetings with the Puerto Rico Election Commission, where the procedures for facilitating inmate voting, including those confined in the SHU, were discussed and clarified.  Defendant AW Howard was explicitly informed of the legal requirement to ensure all inmates, including those housed in the SHU, were afforded their fundamental right to vote. Despite this knowledge,

Defendant AW Howard knowingly and intentionally decided not to allow SHU inmates, including Plaintiff, to participate in the election. Defendant's AW Howard willful violation in impeding Plaintiff and similarly situated SHU inmates from exercising their right to vote directly caused their disenfranchisement. Defendant AW Howard failed to enforce voting protocols, supervise staff, or address barriers that obstructed Plaintiff's participation in the election. Defendant AW Howard is sued in both their **official** and **individual capacities** for their deliberate inaction, supervisory failures, and role in the conspiracy to deprive Plaintiff of his voting rights.

13. **Defendant Frances Rivera, Associate Warden Programs**, (hereinafter, Defendant AW Rivera), is and was at all times relevant herein a resident of Puerto Rico, employed by the FBOP as Associate Warden Programs at MDC Guaynabo in Puerto Rico. As the Associate Warden Programs, Defendant AW Rivera oversaw inmate programs, including voting rights initiatives and compliance. Defendant AW Rivera participated in meetings with the Puerto Rico Election Commission, where the procedures for facilitating inmate voting, including those confined in the SHU, were discussed and clarified. Despite this knowledge and responsibility, Defendant AW Rivera knowingly and intentionally decided not to allow

SHU inmates, including Plaintiff, to participate in the election. Defendant's AW Rivera deliberate failure to provide information about the voting process, coordinate escorts for SHU inmates, or ensure staff compliance with voting procedures resulted in the direct violation of Plaintiff's constitutional rights. Defendant's AW Rivera willful inaction ensured the disenfranchisement of Plaintiff and similarly situated SHU inmates. Defendant AW Rivera is sued in both their **official** and **individual capacities** for their supervisory failures and intentional obstruction of voting rights.

14. **Defendant Josean Nieves, Correctional Services Supervisor**, (hereinafter, Defendant Captain Nieves), is and was at all times relevant herein a resident of Puerto Rico, employed by the FBOP as Correctional Services Supervisor at MDC Guaynabo in Puerto Rico. Defendant Captain Nieves was tasked with managing correctional staff and ensuring compliance with institutional policies, including those protecting inmates' voting rights. Defendant Captain Nieves participated in meetings with the Puerto Rico Election Commission, where the procedures for facilitating inmate voting, including those confined in the SHU, were discussed and clarified. Defendant Captain Nieves was fully informed of the requirement to facilitate voting for SHU inmates during the November 3, 2024,

election. However, Defendant Captain Nieves knowingly and intentionally decided to deny Plaintiff and other SHU inmates the ability to vote. Defendant's Captain Nieves willful violations in impeding Plaintiff and similarly situated SHU inmates from exercising their fundamental right to vote resulted in the direct violation of their constitutional and statutory rights. Defendant Captain Nieves is sued in both their **official** and **individual capacities** for their deliberate inaction, failure to supervise staff, and role in conspiring to deprive Plaintiff of his voting rights.

15. **Defendant FNU/ Ojeda**, (hereinafter, Defendant Lt. Ojeda), is and was at all times relevant herein a resident of Puerto Rico, employed by the Federal Bureau of Prisons (FBOP) as Lieutenant at MDC Guaynabo in Puerto Rico. Defendant Lt. Ojeda was directly responsible for supervising correctional officers assigned to the SHU and ensuring that institutional policies protecting inmates' voting rights were enforced. Despite being informed of the legal requirement to facilitate voting for SHU inmates, Defendant Lt. Ojeda knowingly and intentionally decided not to allow Plaintiff and other SHU inmates to participate in the election. Defendant's Lt. Ojeda willful violation in impeding Plaintiff and similarly situated SHU inmates from exercising their right to vote ensured their

disenfranchisement. Defendant Lt. Ojeda is sued in both their **official** and **individual capacities** for their deliberate inaction and role in systematically obstructing Plaintiff's access to the electoral process.

16. **Defendant FNU/LNU, Lt. Special Activities,** (hereinafter, Defendant Lt. Special Activities), is and was at all times relevant herein a resident of Puerto Rico, employed by the Federal Bureau of Prisons (FBOP) as Lieutenant at MDC Guaynabo in Puerto Rico. Defendant Lt. Special Activities was responsible for coordinating external programs and activities, including voting, in partnership with the Puerto Rico Election Commission. Despite being fully informed of the Election Commission's presence and protocols for facilitating inmate voting, Defendant Lt. Special Activities knowingly and intentionally decided to deny SHU inmates, including Plaintiff, the ability to vote. Defendant's Lt. Special Activities willful actions ensured that Plaintiff and similarly situated inmates were excluded from the electoral process. Defendant Lt. Special Activities is sued in both their **official** and **individual capacities** for their deliberate and intentional actions in depriving Plaintiff of his voting rights.

17. **Defendant FNU/LNU, Lt. Operations**, (hereinafter, Defendant Lt. Operations ), is and was at all times relevant herein a resident of Puerto Rico, employed by the Federal Bureau of Prisons (FBOP) as Lieutenant at

MDC Guaynabo in Puerto Rico. Defendant Lt. Operations   was tasked with overseeing institutional security and ensuring compliance with federal mandates, including those related to inmate voting rights. Defendant Lt. Operations   knowingly and intentionally decided not to allow SHU inmates, including Plaintiff, to participate in the election by failing to implement voting procedures, ignoring requests for assistance, and refusing to provide accommodations for SHU inmates. Defendant's Lt. Operations       willful violations directly caused Plaintiff's disenfranchisement and the systemic exclusion of SHU inmates from the electoral process. Defendant Lt. Operations   is sued in both their official and individual capacities.

18. **Defendants FNU/LNU, SHU Correctional Officers One through Six**, are and were at all times relevant herein residents of Puerto Rico, employed by the FBOP as Correctional Officers at MDC Guaynabo in Puerto Rico. Defendants CO One through Six were assigned to the Special Housing Unit (SHU) at MDC Guaynabo on November 3, 2024.  Despite being explicitly informed of their responsibilities to facilitate voting for SHU inmates, Defendants CO One through Six knowingly and intentionally refused to allow Plaintiff and other SHU inmates to participate in the election. These Defendants willfully ignored their legal

obligations under federal and state laws, including the Voting Rights Act, by failing to notify SHU inmates of the Election Commission's presence, failing to inform them of voting procedures, and denying them the opportunity to exercise their right to vote. Furthermore, Defendants CO One through Six deliberately obstructed Plaintiff's ability to participate in the election by refusing to coordinate with correctional corridors to escort SHU inmates to the designated voting area in the visiting room and failing to provide the necessary voting accommodations, including registration materials and waiver forms for those who chose not to vote. Their actions were not passive failures but active and intentional measures designed to prevent Plaintiff and similarly situated SHU inmates from accessing the electoral process. Defendants CO One through Six are sued in both their official and individual capacities for their willful participation in obstructing Plaintiff's voting rights and for knowingly engaging in conduct that deprived Plaintiff and similarly situated SHU inmates of their fundamental right to vote.

19. **Other Unknown Bureau of Prisons Officials**: These unknown individuals participated in the systemic disenfranchisement of SHU inmates, including Plaintiff, by knowingly allowing constitutional violations to occur and failing to enforce voting procedures. Their

deliberate actions and omissions ensured Plaintiff's exclusion from the electoral process. These Defendants are sued in both their **official** and **individual capacities**.

## IV.  FACTUAL BACKGROUND

### A.  Overview of the Puerto Rican Gubernatorial Election

20. On November 3, 2024, the Commonwealth of Puerto Rico conducted its gubernatorial election, a significant democratic event. This election represented a pivotal moment in Puerto Rico's governance, with the governor's office and other state political positions being determined by the electorate. Participation in this election was a cornerstone of democratic society, and the right to vote is protected under the United States Constitution**,** federal statutes**, and** Puerto Rico's  Electoral Code of 2020 (Law 58-2020)**.**

21. Plaintiff **Nelson Torres Delgado**, a U.S. citizen and lawful resident of Puerto Rico, was an eligible voter under Puerto Rican law and the United States Constitution. As an incarcerated individual, Plaintiff's right to vote was explicitly safeguarded under Puerto Rico's election laws, which mandate the inclusion of incarcerated voters in the democratic process. Plaintiff's eligibility to vote in the gubernatorial election was undisputed, and the Puerto Rico Election Commission (CEE) had made provisions to

ensure that all eligible inmates, including those housed in restrictive units such as the SHU, were provided the opportunity to register and cast their votes.

22. Recognizing the importance of voting rights, the Puerto Rico Election Commission (CEE) worked closely with MDC Guaynabo's administration to facilitate voting for inmates. The Election Commission delivered over 3,000 ballots to MDC Guaynabo, established voting procedures, and designated the facility's visiting room as the official voting area for the election. The Election Commission also arranged for specific accommodations to ensure the inclusion of inmates housed in restrictive housing units, such as the SHU, as required under Articles 5.3, 9.1, and 10.6 of the Electoral Code of Puerto Rico of 2020. These accommodations included coordination with prison staff to provide escorts for SHU inmates to the voting area and procedures to ensure that SHU inmates were informed of their rights to participate in the election.

## B.  Plaintiff's Confinement and Voting Eligibility

23. Plaintiff Nelson Torres Delgado was incarcerated at MDC Guaynabo, a federal detention facility in Puerto Rico operated by the FBOP, on October 17, 2024. MDC Guaynabo houses both pretrial detainees and convicted individuals serving federal sentences. Plaintiff was confined in the Special

Housing Unit (SHU), a highly restrictive section of the facility designated for administrative and disciplinary segregation.

24. SHU inmates, including Plaintiff, face extreme restrictions on movement, communication, and access to institutional resources. Plaintiff was held in solitary confinement in a one-man cell, where he had limited interactions with other inmates and minimal access to information about institutional activities or external events. These conditions created systemic barriers that made it impossible for SHU inmates to exercise their rights without proactive coordination and support from Defendants.

25. Due to the restrictive nature of SHU housing, Plaintiff and similarly situated inmates required specific accommodations to participate in the election process. These accommodations included: (a) timely notification of the Election Commission's presence and the voting procedures; (b) coordinated escorts to the voting area; and (c) access to necessary information, including waiver forms for those choosing not to vote. These accommodations were essential to ensuring compliance with constitutional and statutory protections for voting rights.

## C.  Efforts by the Puerto Rico Election Commission

26. The Puerto Rico Election Commission (CEE) recognized the critical importance of ensuring that all eligible voters, including incarcerated

individuals, were able to participate in the 2024 gubernatorial election. The CEE took proactive steps to coordinate with MDC Guaynabo's administration to establish detailed procedures to ensure full compliance with Puerto Rico's Electoral Code of 2020 (Ley 58-2020), which guarantees voting rights for incarcerated individuals. These procedures included: (a) pre-registering eligible inmates, including those not yet registered to vote; (b) delivering ballots to MDC Guaynabo to facilitate inmate voting; and (c) providing reasonable accommodations to ensure that SHU inmates could access the voting area and cast their votes without obstruction or delay.

27. To fulfill its statutory obligations, the CEE delivered over 3,000 ballots to MDC Guaynabo in preparation for the election. The Election Commission held numerous meetings with Defendants, including Defendant Warden Adan, to establish clear voting procedures that complied with both federal law and Puerto Rican regulations. The Commission made it explicitly clear to Defendants that voting rights must be enforced for all eligible inmates, including those confined in the SHU, and that denying access to the electoral process would constitute a direct violation of both state and federal law.

28.  The Federal defendants emphasized that the voting activities were to be held in the visiting room area of MDC Guaynabo where all interested inmates willling to register and cast their were gong to be excorted from their respective living quartes to the visiting room under its strict supervision. In compliance with Puerto Rico's election regulations, the Commission required that all eligible inmates who chose to vote would be allowed to both register and cast their votes on the same date, November 3, 2024. This streamlined process was designed to ensure that all inmates, including those housed in restrictive housing units like the SHU, had a meaningful opportunity to exercise their right to vote. Defendants were explicitly informed that the registration and voting procedures would be executed concurrently and under the direct supervision of the Election Commission in the visiting room, and that no eligible inmate could be excluded or denied access based on housing status.

29.  The Election Commission provided extensive guidance and training to Defendants on how to implement and enforce these voting procedures. Defendants were informed of their legal responsibilities to notify all inmates, including those confined in the SHU, of their right to vote and the procedures necessary to exercise that right. The Commission unequivocally stressed that every inmate, regardless of their housing unit

or custodial status, had the constitutional right to vote and that it was Defendants' duty to ensure that these rights were protected. The Election Commission further clarified that any failure to provide SHU inmates with access to the voting process would constitute a serious violation of federal and Puerto Rican law.

30. Despite the Election Commission's clear directives, repeated assurances, and detailed instructions, Defendants knowingly and intentionally decided not to comply with these legal requirements. Defendants failed to notify SHU inmates, including Plaintiff, of the Election Commission's presence and the voting procedures. They deliberately chose not to implement the required protocols, including coordinating escorts for SHU inmates to the voting area, distributing ballots, or ensuring that waiver forms were provided to those choosing not to vote. These decisions were not the result of oversight or negligence but reflected a deliberate and systemic effort to deprive Plaintiff and other SHU inmates their fundamental right to vote.

31. The Election Commission made it abundantly clear to Defendants that their compliance with these voting procedures was not optional but legally mandated under both federal and Puerto Rican law. Defendants, acting with full knowledge of their legal obligations, deliberately disregarded these requirements and chose to obstruct the democratic process for SHU

inmates, including Plaintiff. By knowingly failing to comply with the Election Commission's directives and refusing to enforce the voting procedures, Defendants ensured the disenfranchisement of Plaintiff and similarly situated inmates, in direct violation of constitutional and statutory mandates.

**32.** The Election Commission's efforts to facilitate the election, which included providing training, logistical support, and detailed instructions to Defendants, were intentionally undermined by Defendants' actions. This deliberate obstruction by Defendants violated Plaintiff's and other SHU inmates' constitutional rights and directly caused their exclusion from the November 3, 2024, gubernatorial election.

**D.   Assurances and Responsibilities of Defendants**

**33.** Defendants, led by Defendant Warden Adan, were explicitly informed by the Puerto Rico Election Commission (CEE) of their legal responsibilities to facilitate inmate voting during the November 3, 2024, gubernatorial election. The Election Commission emphasized that voting is a fundamental right protected under the United States Constitution, federal statutes, and Puerto Rican law, and that denying this right would constitute a serious violation of constitutional and statutory mandates. Defendants were required to ensure that all eligible inmates, including those housed

in the SHU, were informed of their voting rights and provided meaningful access to the voting process.

34. The Puerto Rico Election Commission held multiple meetings with Defendant Warden Adan; Defendant AW Howard; Defendant AW Rivera; and Defendant Captain Nieves, to discuss and coordinate the voting process in compliance with Puerto Rican law and federal constitutional protections. During these meetings, the Election Commission provided detailed guidance and instructions regarding the procedures for registering and allowing inmates to vote. It was agreed that voting activities would take place in the visiting room area of MDC Guaynabo under the strict supervision of the Election Commission, and that all eligible inmates, including those housed in the SHU, would have the opportunity to both register and cast their votes on the same day. The Commission made it clear that no inmate could be excluded from the electoral process based on their housing status or custodial classification. While Defendant Lt. Ojeda; Defendant Lt. Special Activities; and Defendant Lt. Operations did not attend these meetings, they were nevertheless informed of the voting procedures and their responsibilities by Defendant Warden Adan; Defendant AW Howard; AW Rivera; and Defendant Captain Nieves.

**35.** Furthermore, Defendants Captain Nieves, Lt. Ojeda, Lt. Special Activities, and Lt. Operations were explicitly tasked with ensuring that correctional staff, including SHU Correctional Officers One through Six, were fully briefed on the voting procedures and their responsibilities. These responsibilities included notifying SHU inmates of the electoral process, coordinating escorts to the voting area for inmates who wished to vote, and providing waiver forms for inmates who declined to participate. These instructions reflected the legal obligations discussed during the Election Commission's meetings and were designed to ensure compliance with federal and state voting rights laws.

**36.** On the morning of November 3, 2024, officials from the Puerto Rico Election Commission (CEE) arrived at MDC Guaynabo to oversee and facilitate the electoral process. In accordance with the previously established agreements between the CEE and MDC Guaynabo officials, election officials set up the designated voting area in the facility's visiting room. As part of this arrangement, all eligible inmates, including those confined in the SHU, were expected to be escorted to the voting area so they could cast their ballots in compliance with both federal and Puerto Rican election laws. The CEE had received assurances from Warden

Angel Luis Adan and other MDC Guaynabo officials that the agreed-upon voting procedures would be properly implemented.

37. However, as the electoral process commenced, Election Commission officials immediately noticed that no SHU inmates were arriving to vote. Concerned by this irregularity, election officials inquired about the absence of SHU inmates, seeking clarification from MDC Guaynabo authorities. In response, Defendants Associate Warden (AW) Lewis Howard, Associate Warden (AW) Frances Rivera, and Correctional Services Supervisor Captain Josean Nieves falsely represented to Election Commission officials that no SHU inmates had expressed any interest in voting. These statements were knowingly false, as Defendants had intentionally taken steps to prevent SHU inmates, including Plaintiff Nelson Torres-Delgado, from even being aware that the election was taking place.

38. Prior to the election date, Defendant Warden Angel Luis Adan; Defendant AW Howard; Defendant AW Rivera; and Defendant Captain Nieves deliberately reversed their initial directives that had required correctional officers to inform SHU inmates of their right to vote. Instead, they issued new instructions to Defendant Lt. Ojeda (SHU Lieutenant in Charge), Defendant Special Activities Lieutenant, and Defendant Operations

Lieutenant, explicitly directing them not to inform Plaintiff or any other SHU inmate of the upcoming election, the presence of Election Commission officials, or the process for casting their votes.

39. Furthermore, Defendants Captain Nieves, Lt. Ojeda, Special Activities Lieutenant, and Operations Lieutenant then relayed these revised orders to SHU Correctional Officers One through Six, instructing them to withhold all information regarding the electoral process from Plaintiff and other SHU inmates. This directive was designed to systematically deprive Plaintiff and similarly situated SHU inmates of their constitutionally protected right to vote.

40. Through these coordinated actions, Defendants ensured that Plaintiff and other SHU inmates would remain entirely unaware of the Election Commission's presence at MDC Guaynabo or of their legal opportunity to participate in the election. This deliberate suppression of voting rights was not the result of an administrative oversight, but a calculated and willful conspiracy to disenfranchise Plaintiff and other similarly situated SHU inmates in violation of federal law, constitutional protections, and Puerto Rican election law.

41. On November 3, 2024, acting pursuant to the revised directives issued by Defendant Captain Nieves, Defendant Lt. Ojeda, Defendant Special

Activities Lieutenant, and Defendant Operations Lieutenant, Defendants SHU Correctional Officers One through Six willfully failed to inform Plaintiff of the election process, refused to coordinate his access to the visiting room where voting was taking place, and took no steps to facilitate his participation in the electoral process. Instead of fulfilling their legal obligations, these officers actively perpetuated a climate of misinformation and obstruction, refusing to engage with Plaintiff or any other SHU inmates regarding their voting rights or the election process.

42. Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations; and SHU Correctional Officers One through Six acted in a coordinated effort to deceive and obstruct Plaintiff and similarly situated inmates in the SHU from exercising their right to vote. Their deliberate decisions to suppress voting rights reflect a collective intent to violate Plaintiff's constitutional rights. These Defendants knew that failing to notify SHU inmates of the Election Commission's presence, refusing to coordinate escorts to the voting area, and ignoring requests to vote would result in the disenfranchisement of Plaintiff and others. Despite this knowledge, Defendants knowingly chose to obstruct the democratic process, violating Plaintiff's constitutional rights under the First, Fifth, Fourteenth, and Fifteenth Amendments, as

well as his statutory rights under the Voting Rights Act, 52 U.S.C. § 20510.constitutional rights under federal and Puerto Rican law.

43. The Puerto Rico Election Commission made it abundantly clear to Defendants during their meetings that compliance with the voting procedures was not optional but a legal mandate under federal and Puerto Rican law. The Commission explicitly stated that every eligible inmate, regardless of housing status, had the right to participate in the election, and it was the responsibility of Defendants to ensure that this right was protected. Defendants' assurances to the Election Commission, followed by their deliberate decision to reverse instructions and block SHU inmates from participating, demonstrate a pattern of deception, obstruction, and systemic indifference to Plaintiff's constitutional and statutory rights.

44. By failing to notify SHU inmates of their right to vote, refusing to coordinate their access to the voting area, and actively obstructing the process, Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations ; and SHU Correctional Officers One through Six directly caused Plaintiff's disenfranchisement and violated his constitutional rights. Their deliberate actions ensured the exclusion of Plaintiff and similarly situated SHU

inmates from the November 3, 2024, election, in clear violation of both federal and state law.

**E.    Failure to Fulfill Responsibilities**

**45.**  Despite being explicitly informed of their legal obligations by the Puerto Rico Election Commission (CEE) and their assurances that they would comply with voting procedures, Defendants Warden Adan;  AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations ; and SHU Correctional Officers One through Six knowingly and intentionally failed to fulfill their responsibilities. Defendants' actions and omissions were deliberate, systemic, and designed to obstruct Plaintiff and similarly situated SHU inmates from exercising their constitutional right to vote.

**46.**  On November 3, 2024, the designated election date, Defendants collectively failed to implement the necessary procedures to ensure that Plaintiff and other SHU inmates could participate in the voting process. These failures included:

**47.**  Failure to Inform SHU Inmates: Defendants refused to notify Plaintiff and other SHU inmates of the Election Commission's presence in the facility and their right to vote. Defendants deliberately withheld information about the registration and voting process, ensuring that Plaintiff and similarly

situated inmates were unaware of their opportunity to participate in the election.

48. Failure to Coordinate Escorts to the Voting Area: Defendants failed to provide the necessary escorts for SHU inmates to access the visiting room, where the Election Commission had established the voting area. This deliberate refusal to coordinate logistical support effectively blocked SHU inmates, including Plaintiff, from accessing the electoral process.

49. Failure to Provide Waiver Forms: Defendants failed to distribute waiver forms to SHU inmates who chose not to vote, violating the Election Commission's protocols and denying inmates the opportunity to make an informed decision about their participation.

50. Defendants SHU Correctional Officers One through Six, acting under the directives of Defendant Captain Nieves, Lt. Ojeda, Lt. Special Activities, and Lt. Operations , willfully ignored their duty to inform Plaintiff and other SHU inmates about the voting process. These officers actively refused to engage with Plaintiff regarding his voting rights and denied him access to the visiting room where voting activities were taking place. By refusing to take any steps to facilitate Plaintiff's participation in the election, these Defendants deliberately obstructed Plaintiff's ability to exercise his constitutional rights.

51. Defendants' actions were not isolated incidents but part of a coordinated and systemic effort to disenfranchise Plaintiff and similarly situated SHU inmates. Defendants, at all levels of authority, knowingly reversed prior instructions, withheld critical information, and ignored their responsibilities to enforce voting procedures. These actions were designed to ensure that no SHU inmates, including Plaintiff, would have the opportunity to register or vote in the November 3, 2024, election.

52. The deliberate failures of Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations; and SHU Correctional Officers One through Six demonstrate a reckless disregard for Plaintiff's constitutional and statutory rights. Defendants acted with full knowledge of their legal obligations and the consequences of their actions, choosing to obstruct the voting process and exclude SHU inmates from the electoral process.

53. Defendants' refusal to fulfill their responsibilities ensured that Plaintiff and other SHU inmates were denied their fundamental right to vote, a violation that caused significant harm. Plaintiff was prepared and willing to participate in the election, but Defendants' deliberate inaction and obstruction left him entirely disenfranchised. These actions violated Plaintiff's rights under the First, Fifth, Fourteenth, and Fifteenth

Amendments to the United States Constitution, as well as federal and Puerto Rican election laws.

54. The systemic failures of Defendants to fulfill their responsibilities, despite repeated assurances to the Election Commission and clear legal directives, underscore the intentional and coordinated nature of their conduct. By failing to notify SHU inmates of their rights, refusing to provide the necessary accommodations, and actively obstructing access to the voting area, Defendants ensured that Plaintiff and similarly situated SHU inmates were excluded from the democratic process.

## F.    Impact on Plaintiff and Similarly Situated Inmates

55. The deliberate exclusion of Plaintiff and other SHU inmates from the electoral process caused significant harm. Plaintiff, who was eligible and willing to participate in the election, was denied his fundamental right to vote due to Defendants' willful actions.

56. The disenfranchisement caused Plaintiff profound harm, including: (a) Denial of a Fundamental Right: Plaintiff was unlawfully deprived of his constitutional and statutory right to vote, undermining his dignity and ability to participate in the democratic process; (b) Emotional Distress and Humiliation: Plaintiff experienced profound emotional distress and humiliation due to the deliberate and unjustified exclusion from the

election; (c) Loss of Democratic Participation: Plaintiff was denied the opportunity to voice his choice in an election that directly impacted his community and governance.

## G.  Defendants' Systemic Violations

57. Defendants' actions and omissions were not merely negligent but reflected a deliberate and coordinated effort to disenfranchise SHU inmates, including Plaintiff. Defendants acted with full knowledge of their legal obligations and knowingly chose to suppress Plaintiff's voting rights.

58. These systemic violations reflect a reckless disregard for constitutional protections, federal and state voting rights laws, and institutional policies. Defendants' deliberate actions directly caused Plaintiff's disenfranchisement and the systemic exclusion of SHU inmates from the democratic process.

## V.  <u>CAUSE OF ACTION</u>

**(COUNT 1)**
**(Violaiton of 28 U.S.C. § 1343)**
**(Civil Rights and Elective Franchise)**
**(As Secured under the First, Fifth, Fourteenth and Fifteenth Amendment)**
**(Of the United States Constitution and Federal Laws)**

59. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

A. **LEGAL BASIS.**

**60.** Title 28 U.S.C. § 1343 provides jurisdiction for civil actions to redress the deprivation of rights secured by the United States Constitution or federal law, including voting rights. It authorizes damages and equitable relief for civil rights violations committed under color of law. The First, Fifth, Fourteenth, and Fifteenth Amendments to the Constitution explicitly protect the right to vote, ensure equal protection under the law, and prohibit disenfranchisement. Any intentional interference with these rights by government officials constitutes a direct violation of federal law.

A. **FIRST AMENDMENT PROTECTIONS**.

**61.** The First Amendment guarantees freedom of expression and political participation, including the right to vote as a form of political speech. By intentionally suppressing Plaintiff's ability to vote, Defendants directly silenced Plaintiff's voice in the democratic process and denied him his constitutional right to political expression. The Supreme Court has consistently recognized that voting is a fundamental component of political speech, and Defendants' actions constitute a clear violation of the First Amendment.

B. **FIFTH AMENDMENT PROTECTIONS.**

62. The Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. Defendants' actions constitute a direct violation of Plaintiff's procedural and substantive due process rights, as they failed to provide notice, an opportunity to participate, or any procedural safeguards to ensure Plaintiff's ability to exercise his fundamental right to vote. By intentionally withholding election information, preventing access to the voting area, and ensuring that SHU inmates remained unaware of the electoral process, Defendants engaged in arbitrary and unlawful government action, depriving Plaintiff and similarly situated SHU inmates of their constitutionally protected rights. The Supreme Court has consistently held that due process requires fair procedures before depriving individuals of fundamental rights, and Defendants' failure to implement any procedural safeguards before denying Plaintiff his right to vote constitutes a clear Fifth Amendment violation.

C. **FOURTEENTH AMENDMENT PROTECTIONS**.

63. The Fourteenth Amendment ensures equal protection under the law and prohibits government officials from treating similarly situated individuals differently without a legitimate basis. Defendants' actions violated the Equal Protection Clause by treating SHU inmates, including Plaintiff,

differently from other inmates at MDC Guaynabo who were allowed to vote. Defendants' actions created an illegal two-tiered system, where non-SHU inmates were given access to the electoral process while SHU inmates were deliberately kept in the dark and denied their right to vote without any legal justification.

## D.  FIFTEENTH AMENDMENT PROTECTIONS.

64.  The Fifteenth Amendment explicitly prohibits the denial or abridgment of voting rights based on race, color, or previous condition of servitude. Defendants' actions constitute a systematic effort to disenfranchise incarcerated individuals, a demographic that has historically been subjected to voter suppression, disproportionately affecting minority and vulnerable populations. The Supreme Court has repeatedly held that practices that create systemic barriers to voting, particularly against vulnerable groups, violate the Fifteenth Amendment. Defendants' conspiracy to exclude SHU inmates from the electoral process represents an orchestrated effort to suppress Plaintiff's right to vote, which the Fifteenth Amendment was enacted to prevent.

## E.  DEFENDANTS' KNOWLEDGE AND CONDUCT.

65.  Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations; and SHU Correctional

Officers One through Six knowingly and intentionally deprived Plaintiff and similarly situated SHU inmates of their constitutional right to vote in the November 3, 2024, gubernatorial election. These Defendants acted with full knowledge that their conduct violated 28 U.S.C. § 1343 and the First, Fifth, Fourteenth, and Fifteenth Amendments, yet they deliberately executed their plan to suppress Plaintiff's voting rights.

66. **Defendants' Assurances to the Election Commission**: Defendants Warden Adan, AW Howard, AW Rivera, and Captain Nieves attended multiple meetings with the Puerto Rico Election Commission (CEE), during which they were explicitly informed of their legal duty to facilitate the electoral process for all eligible inmates, including those in the SHU. The Election Commission provided training, guidance, and instructions to Defendants, explaining the specific requirements to notify SHU inmates of their right to vote, coordinate their access to the designated voting area, and ensure full compliance with federal and Puerto Rican election laws.

67. Despite their assurances to the Election Commission, Defendants intentionally reversed their commitments and issued instructions ensuring that SHU inmates, including Plaintiff, would not be informed of their voting rights, would not be given access to the voting area, and would not be able to participate in the election. These actions were fraudulent,

deceptive, and part of a coordinated plan to obstruct Plaintiff's constitutional rights.

68. **Defendants' Conspiracy and Execution of Their Plan.** Supervisory Defendants, including Warden Adan, AW Howard, AW Rivera, and Captain Nieves, knowingly directed subordinates—including Lt. Ojeda, Lt. Special Activities, Lt. Operations, to suppress Plaintiff's ability to vote. These instructions ensured that no SHU inmate would be aware of the election, the presence of the Election Commission, or their right to participate.

69. Defendants Lt. Ojeda, Lt. Special Activities, and Lt. Operations, under orders from their superiors, knowingly relayed these fraudulent directives to SHU Correctional Officers One through Six, ensuring that Plaintiff and similarly situated SHU inmates were never given any opportunity to vote. Their actions were not passive failures of oversight but deliberate and calculated efforts to suppress voting rights.

70. Defendants SHU Correctional Officers One through Six, acting under explicit directives, actively refused to inform Plaintiff or other SHU inmates about the voting process, ignored any inquiries regarding voting, and ensured that no SHU inmate participated in the election. These officers were the only direct source of communication for SHU inmates,

and by deliberately withholding information, they ensured Plaintiff's complete exclusion from the election.

## F.   LIABILITY.

**71.** Each Defendant is individually and collectively liable for their knowing, willful, and deliberate participation in suppressing Plaintiff's right to vote, in violation of 28 U.S.C. § 1343 and the First, Fifth, Fourteenth, and Fifteenth Amendments. Defendants acted under color of law to obstruct Plaintiff and similarly situated SHU inmates from exercising their constitutionally protected right to vote, despite being fully aware that their actions violated federal and Puerto Rican election laws. This systematic and coordinated obstruction was not accidental or an administrative oversight but a calculated effort to disenfranchise Plaintiff and similarly situated inmates. Their actions were conducted with full knowledge of the law and the consequences of their inaction, making each of them directly liable for violating Plaintiff's civil rights.

## G.   INDIVIDUAL LIABILITY.

**72.** Each Defendant was entrusted with a legal duty to ensure that all inmates, including those in SHU, were provided with meaningful access to the electoral process. Each Defendant's individual actions and decisions directly contributed to Plaintiff's disenfranchisement, violating the First,

Fifth, Fourteenth, and Fifteenth Amendments, as well as federal statutes protecting voting rights.

73. Defendant Warden Adan, as the highest-ranking official at MDC Guaynabo, was the primary architect of the suppression scheme and had ultimate authority over the administration of voting procedures. Defendant Warden Adan personally assured the Election Commission that voting rights procedures would be properly enforced but knowingly and willfully failed to fulfill those assurances. Defendant Warden Adan had full knowledge that withholding voting information and obstructing Plaintiff's access to the election process violated federal law, yet he issued or approved directives to suppress SHU inmates' ability to vote. His failure to act despite full knowledge of the consequences makes him individually liable for directly depriving Plaintiff of his constitutional rights.

74. Defendant AW Howard, was responsible for overseeing daily operations at MDC Guaynabo, including staff compliance with election procedures. Defendant AW Howard willfully ignored directives from the Election Commission and knowingly issued or enforced instructions that ensured SHU inmates, including Plaintiff, remained unaware of the election process. Defendant AW Howard's deliberate refusal to enforce lawful

voting procedures and compliance standards makes him individually liable for his role in the conspiracy.

75. Defendant AW Rivera, was responsible for ensuring the implementation of voting rights programs for inmates at MDC Guaynabo. Defendant AW Rivera had direct oversight of inmate participation in civic programs, including elections, yet intentionally failed to comply with directives from the Election Commission. Defendant AW Rivera's deliberate failure to implement legally required voting procedures makes him individually liable for Plaintiff's disenfranchisement.

76. Defendant Captain Nieves, was directly responsible for supervising correctional staff and ensuring compliance with institutional security policies. Defendant Captain Nieves had the authority to enforce the election process and discipline staff members who failed to comply. Instead, Defendant Captain Nieves deliberately issued instructions to correctional staff to withhold voting information from SHU inmates, ensuring that Plaintiff and others in SHU were kept in complete ignorance of their voting rights. By actively participating in and overseeing the deprivation of Plaintiff's constitutional rights, Defendant Captain Nieves is individually liable for violating federal law.

**77.** Defendant Lt. Ojeda, knowingly participated in executing the suppression of Plaintiff's voting rights by issuing fraudulent and deceptive instructions to SHU Correctional Officers One through Six, ensuring that no SHU inmate was informed of the election process or provided access to the voting area. Defendant Lt. Ojeda willfully enforced orders that obstructed the Election Commission's voting procedures, actively preventing SHU inmates, including Plaintiff, from accessing their constitutional right to vote. His intentional suppression of voting rights makes him individually liable for Plaintiff's disenfranchisement.

**78.** Defendants Lt. Special Activities and Lt. Operations played a crucial role in relaying fraudulent and deceptive directives to SHU Correctional Officers One through Six, ensuring that no SHU inmate was informed of the election process. These Defendants knowingly and intentionally assisted in the effort to obstruct Plaintiff's voting rights, making them individually liable for suppressing Plaintiff's constitutional rights.

**79.** Defendants SHU Correctional Officers One through Six executed the conspiracy by deliberately withholding information from Plaintiff and similarly situated SHU inmates, ensuring that no one in SHU knew that the election was taking place. These Defendants refused to provide information about voter registration, denied Plaintiff access to the visiting

room where voting took place, and obstructed any possible opportunity for Plaintiff to participate in the election. Their intentional and deliberate refusal to inform Plaintiff about the election, despite being the only available communication link to him, makes them directly and individually liable for Plaintiff's disenfranchisement.

## H.  COLLECTIVE LIABILITY

80.  In addition to individual liability, Defendants acted in concert and conspired to suppress Plaintiff's voting rights, making them jointly and severally liable for the harm caused. Their coordinated actions demonstrate a collective intent to deprive Plaintiff of his right to vote, evidenced by:

81.  Their joint participation in meetings with the Election Commission, where they falsely assured compliance with voting procedures;

82.  Their coordinated reversal of prior directives, which ensured that SHU inmates, including Plaintiff, would not be informed of their right to vote;

83.  Their collective failure to supervise subordinates, thereby ensuring that Plaintiff remained completely unaware of the election process; and

84.  Their joint execution of a scheme to suppress the electoral participation of SHU inmates, demonstrating a shared and calculated objective to disenfranchise Plaintiff and others similarly situated.

## I.   KNOWLEDGE OF FEDERAL AND STATE LEGAL OBLIGATIONS

85.   Defendants knew or should have known that their coordinated actions to suppress Plaintiff's voting rights violated federal and state law. They were explicitly informed by the Election Commission that failing to notify SHU inmates of their voting rights, denying them access to the voting area, and obstructing the voting process would constitute a direct violation of the First, Fifth, Fourteenth, and Fifteenth Amendments, as well as 28 U.S.C. § 1343. Despite this, Defendants knowingly, willfully, and intentionally engaged in conduct to ensure Plaintiff's disenfranchisement.

## J.   INTENTIONAL AND MALICIOUS CONDUCT.

86.   Defendants' actions were not accidental or the result of negligence. Their decisions to suppress voting rights were deliberate, calculated, and executed with the explicit intent to prevent Plaintiff from participating in the election. The systematic withholding of information, refusal to facilitate voter registration, and intentional reversal of instructions to correctional staff confirm that Defendants' conduct was malicious and unconstitutional.

## K.   HARM TO PLAINTIFF

87.   As a direct result of Defendants' coordinated conspiracy and willful deprivation of his constitutional rights, Plaintiff suffered severe and

irreparable harm, including, the denial of a fundamental rights, as Plaintiff was unlawfully deprived of his constitutional right to vote, a core principle of democratic participation, undermining his dignity and ability to engage in civic life.

88. Emotional distress and humiliation, as Plaintiff suffered significant emotional distress, psychological harm, and humiliation, knowing that his exclusion from the election was deliberate and unjustified.

89. Loss of Democratic participation as Plaintiff was denied the opportunity to vote in an election directly affecting his community and governance, reinforcing his disenfranchisement in a manner that violates the First, Fifth, Fourteenth, and Fifteenth Amendments.

## L. COLLECTIVE LIABILITY AND REDRESSABILITY UNDER THE LAW.

90. Defendants' coordinated actions constitute a conspiracy to deprive Plaintiff of his voting rights, making them jointly and severally liable for the damages caused. Their actions directly violate 28 U.S.C. § 1343, which provides civil remedies for the deprivation of constitutional rights under color of law, and are further redressable under the First, Fifth, Fourteenth, and Fifteenth Amendments to the United States Constitution, as well as federal voting rights laws, including 52 U.S.C. § 20510. Defendants' systematic, deliberate, and coordinated suppression of

Plaintiff's right to vote mandates immediate legal redress, as they knowingly engaged in a scheme designed to ensure that Plaintiff and similarly situated SHU inmates were disenfranchised.

91. Defendants acted with malice, coordinated intent, and full awareness that their actions violated constitutional and statutory protections. These were not accidental failures, administrative oversights, or procedural missteps; Defendants knowingly and willfully engaged in a direct and intentional effort to suppress voting rights through deception, obstruction, and coordinated inaction. They deliberately denied Plaintiff and similarly situated SHU inmates their right to vote, ensuring that they were excluded from the democratic process. By reversing prior instructions, issuing fraudulent directives to correctional staff, and actively preventing SHU inmates from participating in the election, Defendants acted with clear, unlawful intent, violating the First, Fifth, Fourteenth, and Fifteenth Amendments, as well as the Voting Rights Act under 52 U.S.C. § 20510.

92. Defendants must be held accountable for their unconstitutional conduct and the irreparable harm caused to Plaintiff. The disenfranchisement of Plaintiff was not a minor or procedural error—it was a premeditated and unconstitutional attack on the democratic process, designed to silence Plaintiff's voice and exclude him from participation in an election that

directly impacted his community and governance. Given the gravity of these violations, Plaintiff seeks immediate legal redress, including compensatory and punitive damages, declaratory relief affirming the violations of his rights, and injunctive relief ensuring that Defendants cannot engage in similar unconstitutional conduct in future elections.

**(COUNT 2)**
**(Violation of 42 U.S.C. § 1985)**
**(Conspiracy to Interfere with Civil Rights)**
**(As Secured under the First, Fifth, Fourteenth and Fifteenth Amendment)**
**(Of the United States Constitution and Federal Laws)**

93. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

## A.  LEGAL BASIS

94. Title 42 42 U.S.C. § 1985(3) prohibits two or more individuals from conspiring to deprive any person or class of persons of their constitutional rights, including the right to vote. It establishes a cause of action for individuals harmed by such conspiracies and applies when government officials act in coordination to obstruct, suppress, or interfere with federally protected rights. This claim is directly tied to violations of the First, Fifth, Fourteenth, and Fifteenth Amendments, which explicitly

safeguard voting rights, ensure equal protection under the law, and prohibit disenfranchisement.

**B.    FIRST,    FIFTH,    FOURTEENTH,    AND    FIFTEENTH AMENDMENT PROTECTIONS.**

**95.**    Plaintiff incorporates by reference the allegations set forth in **Paragraphs 61, 62, 63, and 64** regarding the violations of the **First, Fifth, Fourteenth, and Fifteenth Amendments**, as though fully stated herein. Defendants' actions, as previously alleged, constituted a direct suppression of Plaintiff's political expression under the **First Amendment**, a **deprivation of Plaintiff's procedural due process rights** under the **Fifth Amendment** by failing to provide him with notice or an opportunity to exercise his right to vote, a **discriminatory and unconstitutional denial of equal protection** under the **Fourteenth Amendment**, and a **systematic disenfranchisement of incarcerated individuals** in violation of the **Fifteenth Amendment**.

**C.    DEFENDANTS' KNOWLEDGE AND CONDUCT.**

**96.**    Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; Lt. Ojeda; Lt. Special Activities; Lt. Operations ; and SHU Correctional Officers One through Six knowingly and intentionally conspired to deprive Plaintiff and similarly situated SHU inmates of their right to vote in the November 3, 2024, gubernatorial election. Defendants acted with

full knowledge that obstructing the voting process violated 42 U.S.C. §
1985(3) and the First, Fifth, Fourteenth, and Fifteenth Amendments, yet
they willfully and deliberately executed their plan to suppress Plaintiff's
right to vote.

97.  Defendants Warden Adan, AW Howard, AW Rivera, and Captain Nieves
attended multiple meetings with the Puerto Rico Election Commission
(CEE), during which they were explicitly informed of their constitutional
duty to facilitate the electoral process for all eligible inmates, including
those in the SHU. The Election Commission provided training, guidance,
and detailed instructions on the procedures for inmate voting, including
requirements to notify SHU inmates of their right to vote, coordinate their
access to the designated voting area, and ensure full compliance with
federal and Puerto Rican election laws.

98.  Defendants fraudulently assured the Election Commission that they would
comply with these directives, knowing full well that they had already
devised a coordinated plan to prevent SHU inmates, including Plaintiff,
from participating in the election. Defendants' assurances to the Election
Commission were a calculated and deceptive effort to conceal their
conspiracy to interfere with Plaintiff's voting rights.

99. Supervisory Defendants, including Warden Adan, AW Howard, AW Rivera, and Captain Nieves, intentionally directed subordinates—including Lt. Ojeda, Lt. Special Activities, and Lt. Operations—to execute their conspiracy by systematically withholding all information about the election process from SHU inmates. These Defendants reversed prior directives requiring correctional staff to notify inmates of the election and instead issued explicit instructions to ensure that no SHU inmate was informed of their right to vote or given access to the visiting room, where the Election Commission had established the voting area.

100. Defendants Lt. Ojeda, Lt. Special Activities, and Lt. Operations, under orders from their superiors, knowingly relayed these fraudulent directives to correctional staff, ensuring that SHU inmates were never given any opportunity to vote. Their actions were not passive failures of oversight but deliberate and calculated acts of voter suppression.

101. Defendants SHU Correctional Officers One through Six, acting under direct orders, executed the conspiracy by actively refusing to inform Plaintiff and similarly situated SHU inmates of the Election Commission's presence, denying them access to the voting area, and ensuring that no information about the electoral process was relayed to SHU inmates. These correctional officers were the only direct source of communication

for SHU inmates, and by deliberately withholding information, they ensured Plaintiff's complete exclusion from the election.

**D. LIABILITY.**

**102.** Each Defendant is individually and collectively liable for their roles in conspiring to deprive Plaintiff and similarly situated SHU inmates of their constitutional rights, including their right to vote, their right to equal protection under the law, and their right to be free from racial or status-based disenfranchisement. Defendants' coordinated actions to obstruct Plaintiff's participation in the November 3, 2024, gubernatorial election violated the First, Fifth, Fourteenth, and Fifteenth Amendments, as well as 42 U.S.C. § 1985(3) and 52 U.S.C. § 20510. Defendants' violations were not merely negligent acts or administrative failures but were intentional, deliberate, and malicious actions designed to ensure that Plaintiff and other SHU inmates were deprived of their voting rights.

**E. INDIVIDUAL LIABILITY.**

**103.** Each Defendant had an affirmative duty under federal law and Puerto Rican election law to facilitate the voting rights of all eligible inmates, including those housed in the SHU. Instead, each knowingly and willfully participated in a coordinated effort to obstruct the electoral process,

making them individually liable for their roles in disenfranchising Plaintiff.

104. Defendant Warden Adan,  as the highest-ranking official at MDC Guaynabo, was the primary orchestrator of the conspiracy to prevent SHU inmates from voting. Defendant Warden Adan had the ultimate legal responsibility to ensure the implementation of voting procedures, compliance with Election Commission directives, and adherence to federal and Puerto Rican election laws. Instead of fulfilling these duties, Defendant Warden Adan intentionally directed and approved the obstruction of Plaintiff's right to vote. His actions and omissions constitute direct, knowing violations of federal law, making him individually liable for his role in depriving Plaintiff of his constitutional and statutory rights.

105. Defendant AW Howard, was responsible for overseeing the daily institutional operations at MDC Guaynabo, including compliance with voting procedures. Defendant AW Howard knowingly participated in the conspiracy by failing to ensure that SHU inmates were informed of their right to vote and by issuing directives to correctional staff to obstruct the electoral process. Defendant AW Howard's deliberate refusal to enforce

lawful voting procedures and compliance standards makes him individually liable for his role in the conspiracy.

106. Defendant AW Rivera, was tasked with overseeing inmate programs, including those related to voting rights and civic engagement. Defendant AW Rivera had direct knowledge of the Election Commission's mandates and knowingly chose to disregard these legal requirements, ensuring that Plaintiff and similarly situated SHU inmates remained uninformed about their voting rights and unable to participate in the election. Defendant AW Rivera's intentional acts and failure to act make him individually liable for the constitutional and statutory violations committed against Plaintiff.

107. Defendant Captain Nieves, was responsible for supervising correctional officers and ensuring compliance with institutional policies, including those protecting inmates' voting rights. Instead of enforcing the legal requirement that SHU inmates be given access to the voting process, Defendant Captain Nieves directed correctional staff to withhold information about the election, ensuring Plaintiff's disenfranchisement. By knowingly ordering his subordinates to violate federal law, Defendant Captain Nieves is individually liable for his role in depriving Plaintiff of his constitutional and statutory rights.

108. Defendants Lt. Ojeda, Lt. Special Activities, and Lt. Operations knowingly participated in executing the conspiracy by relaying and enforcing the directives of their supervisors to correctional staff. These Defendants were directly responsible for implementing the scheme to block SHU inmates from voting by ensuring that no voting information reached Plaintiff or similarly situated inmates. Their intentional actions and decisions make them individually liable for their roles in suppressing Plaintiff's constitutional rights.

109. Defendants SHU Correctional Officers One through Six executed the conspiracy by deliberately refusing to inform Plaintiff or other SHU inmates about their voting rights, ensuring that no information about the Election Commission's presence reached the SHU. These Defendants were the only direct line of communication between SHU inmates and the institution, and by willfully failing to relay information, coordinate escorts, or provide voter registration forms, they ensured Plaintiff's total exclusion from the election process. Their deliberate actions make them individually liable for their role in disenfranchising Plaintiff.

## F. COLLECTIVE LIABILITY.

110. Defendants acted in concert, in coordination, and with shared intent to deprive Plaintiff of his right to vote, making them jointly and severally

liable for the harm caused. Their shared conspiracy, demonstrated through their meetings, directives, and execution of their suppression plan, constitutes a coordinated and systematic effort to violate Plaintiff's constitutional and statutory rights.

## G.   KNOWLEDGE OF FEDERAL AND STATE LEGAL OBLIGATIONS.

**111.**   Defendants knew or should have known that their coordinated actions to suppress Plaintiff's voting rights violated federal and state law. They were explicitly informed by the Election Commission that denying Plaintiff and similarly situated SHU inmates the right to vote would constitute a clear and egregious violation of the First, Fifth, Fourteenth, and Fifteenth Amendments, as well as 52 U.S.C. § 20510. Despite this, Defendants knowingly, willfully, and intentionally executed their plan, ensuring that Plaintiff was denied his fundamental rights.

## H.   INTENTIONAL AND MALICIOUS CONDUCT.

**112.**   Defendants' actions were not accidental, negligent, or administrative failures; they were calculated, deliberate, and executed with the explicit intention of preventing Plaintiff from participating in the electoral process. The systematic withholding of information, refusal to provide access to the voting area, and intentional reversal of previously issued instructions

to correctional staff confirm that Defendants' conduct was malicious and unconstitutional.

## I.    HARM TO PLAINTIFF.

113.    As a direct result of Defendants' coordinated conspiracy and willful deprivation of his constitutional rights, Plaintiff suffered severe and irreparable harm, and was unlawfully deprived of his constitutional right to vote, a core principle of democratic participation, undermining his dignity and ability to engage in civic life.

114.    Plaintiff suffered significant emotional distress, psychological harm, and humiliation, knowing that his exclusion from the election was deliberate and unjustified.

115.    Plaintiff was denied the opportunity to vote in an election directly affecting his community and governance, reinforcing his disenfranchisement in a manner that violates the First, Fifth, Fourteenth, and Fifteenth Amendments.

## J.    REDRESSABILITY UNDER THE LAW.

116.    Defendants' coordinated actions constitute a conspiracy to deprive Plaintiff of his voting rights, making them jointly and severally liable for the damages caused. Their actions are directly redressable under federal civil rights statutes, constitutional protections, and voting rights laws, and

their systematic deprivation of Plaintiff's rights mandates immediate legal redress.

117.    Defendants acted with malice, coordinated intent, and full awareness that their actions violated constitutional and statutory protections. They deliberately denied Plaintiff and similarly situated SHU inmates their right to vote, ensuring that they were excluded from the democratic process in direct violation of the First, Fifth, Fourteenth, and Fifteenth Amendments and 52 U.S.C. § 20510. Defendants must be held accountable for their unconstitutional conduct and the irreparable harm caused to Plaintiff.

**(COUNT 3)**
**(Violation of the Voting Rights Act)**
**(52 U.S.C. § 20510)**

118.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

## A.   LEGAL BASIS

119.    The Voting Rights Act, codified under 52 U.S.C. § 20510, guarantees individuals the right to seek civil remedies for violations of federal voting protections. It provides for declaratory and injunctive relief when individuals are unlawfully denied access to the voting process. The Act specifically prohibits any practice or procedure by government officials

that results in the suppression, obstruction, or disenfranchisement of eligible voters, including incarcerated individuals who maintain the legal right to vote under state and federal law. Defendants knowingly and willfully violated this law by obstructing Plaintiff's right to register and vote in the November 3, 2024, gubernatorial election.

## B.   DEFENDANTS' KNOWLEDGE AND CONDUCT

120.   Defendants Warden Adan; AW Howard; AW Rivera; Captain Nieves; LT. OJEDA, Lt. Ojeda; Lt. Special Activities; Lt. Operations ; and SHU Correctional Officers One through Six knowingly violated the Voting Rights Act by intentionally and systematically obstructing Plaintiff and similarly situated SHU inmates from participating in the election. These Defendants had full knowledge of their legal obligations to facilitate voting for all eligible inmates, including those confined in the SHU, yet they deliberately and willfully obstructed Plaintiff's ability to exercise his voting rights.

121.   Defendants were explicitly informed by the Puerto Rico Election Commission (CEE) of their legal obligation to facilitate the voting process for all eligible inmates, including those housed in the SHU. The Election Commission held multiple training sessions and meetings with Defendant Warden Adan; Defendant AW Howard; Defendant AW Rivera; and

Defendant Captain Nieves to ensure compliance with the Voting Rights Act and Puerto Rico's Código Electoral de Puerto Rico de 2020 (Ley 58-2020). These training sessions made it clear that all eligible inmates must be informed of their voting rights, given access to the electoral process, and provided the opportunity to register and vote without obstruction.

122. Despite these explicit legal directives, Defendants knowingly and intentionally conspired to prevent Plaintiff and other SHU inmates from registering to vote and casting their ballots. Defendants willfully refused to notify Plaintiff and other SHU inmates that the election was taking place, effectively ensuring that they remained entirely unaware of the electoral process on November 3, 2024.

## C. DEFENDANTS' STRATEGIC TIMING TO PREVENT PLAINTIFF FROM CHALLENGING THEIR ACTIONS.

123. Defendants not only conspired to obstruct Plaintiff's voting rights but also strategically timed their obstruction to ensure that Plaintiff had no opportunity to challenge their conduct before the election process concluded. Under the National Voter Registration Act (NVRA), an aggrieved person must provide written notice of a voting rights violation to the chief election official of the state involved at least 90 days before filing a civil action, unless the violation occurs within 120 days before a federal election, in which case the notice period is reduced to 20 days. If

the violation occurs within 30 days before a federal election, no notice is required before filing suit. *(Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320; Bellitto v. Snipes, 221 F. Supp. 3d 1354; Judicial Watch, Inc. v. Pennsylvania, 524 F. Supp. 3d 399).*

124. Defendants were fully aware of these procedural safeguards under the NVRA but intentionally waited until the last moment to deprive Plaintiff and similarly situated SHU inmates of their right to vote, leaving them no time to challenge the disenfranchisement before the election took place. The Election Commission was set to oversee the national elections on November 5, 2024, and by ensuring Plaintiff was denied access to the voting process on November 3, 2024, Defendants left him and others with no opportunity to seek redress before the electoral process concluded.

125. By strategically delaying their suppression of Plaintiff's voting rights, Defendants knowingly and intentionally ensured that their conspiracy to obstruct the election process could not be stopped before the vote was completed. This calculated obstruction is not merely an administrative failure; it is a deliberate and unconstitutional act designed to ensure Plaintiff and similarly situated SHU inmates were excluded from participating in a lawful election.

**126.** Supervisory Defendants, including Defendant Warden Adan; Defendant AW Howard; Defendant AW Rivera; and Defendant Captain Nieves, played a central role in ensuring that SHU inmates remained unaware of the voting process. These Defendants issued fraudulent and deceptive directives to their subordinates, including Lt. Ojeda, Lt. Special Activities, Lt. Operations , and SHU Correctional Officers One through Six, instructing them not to notify SHU inmates about the voting process, not to provide registration information, and not to facilitate access to the voting area.

**127.** Correctional staff, including SHU Correctional Officers One through Six, deliberately executed these illegal directives by refusing to inform Plaintiff of the election, denying him any opportunity to request to vote, and ensuring that he remained completely in the dark about the democratic process taking place in MDC Guaynabo. These Defendants were not passive participants; they were active enforcers of a scheme to suppress Plaintiff's constitutional right to vote.

## D. LIABILITY

**128.** Each Defendant is individually and collectively liable for their actions and omissions that resulted in the denial of Plaintiff's voting rights under the Voting Rights Act.

129. Defendant Warden Adan,  as the highest-ranking official at MDC Guaynabo, was the primary orchestrator of the scheme to obstruct the voting rights of Plaintiff and similarly situated SHU inmates. Defendant Warden Adan's knowing and willful actions make him directly liable under 52 U.S.C. § 20510.

130. Defendant AW Howard, oversaw the day-to-day institutional operations and knowingly participated in the conspiracy by directing subordinates to obstruct SHU inmates' voting rights, making him civilly liable under the statute.

131. Defendant AW Rivera, was responsible for the implementation of inmate voting programs. Despite full knowledge of the Election Commission's directives, Defendant AW Rivera deliberately obstructed their enforcement, making him civilly liable under 52 U.S.C. § 20510.

132. Defendant Captain Nieves, supervised correctional staff and played a central role in issuing directives that resulted in Plaintiff's disenfranchisement, making him civilly liable under the statute.

133. Defendants Lt. Ojeda, Lt. Special Activities, and Lt. Operations  were intermediaries who relayed instructions to suppress voting rights and ensured that correctional staff actively participated in blocking SHU

inmates from voting. Their deliberate and knowing conduct makes them civilly liable.

134. Defendants SHU Correctional Officers One through Six executed the suppression plan by deliberately withholding all information regarding the election, refusing to coordinate Plaintiff's access to the voting area, and ensuring his complete exclusion from the election process. Their willful and knowing actions make them civilly liable.

## E.   HARM TO PLAINTIFF.

135. As a direct result of Defendants' actions, Plaintiff was unlawfully excluded from the electoral process, causing him significant harm, which resulted in the denial of a fundamental right, as Plaintiff was denied his right to vote under federal law, depriving him of his ability to participate in the democratic process.

136. Plaintiff suffered, emotional distress and humiliation, as Plaintiff knowing that his exclusion from the election was deliberate and unjustified.

137. Plaintiff was deprived of the opportunity to make his voice heard in an election directly affecting his community and governance.

## F.   COLLECTIVE LIABILITY AND REDRESSABILITY UNDER THE LAW.

138. Defendants acted in concert to deny Plaintiff his right to vote in violation of 52 U.S.C. § 20510. Their coordinated and intentional actions

demonstrate a shared purpose to deprive Plaintiff and similarly situated SHU inmates of their voting rights. Defendants are jointly and severally liable for the harm caused by their conspiracy and willful deprivation of Plaintiff's constitutional rights.

139. The systemic disenfranchisement carried out by Defendants must be addressed through full legal redress. Plaintiff demands compensatory damages, punitive damages, declaratory relief affirming Defendants' violations, and injunctive relief ensuring that Defendants cannot engage in similar unconstitutional conduct in future elections.

140. Defendants acted in concert to deny Plaintiff his right to vote in violation of the Voting Rights Act. Their deliberate and coordinated efforts to withhold information about the election, block access to the voting area, and suppress Plaintiff's voice in the democratic process make them jointly and severally liable for the harm caused.

## G.   PRIVATE CAUSE OF ACTION UNDER THE VOTING RIGHTS ACT

141. Although the Voting Rights Act primarily grants enforcement authority to government officials, Plaintiff asserts a valid private cause of action under 52 U.S.C. § 20510.

142. Defendants' actions systematically deprived a protected class of the right to vote, triggering federal jurisdiction under the Voting Rights Act.

143. This lawsuit is not an individual complaint but asserts the rights of similarly situated SHU inmates who were all disenfranchised, establishing a broader civil rights violation.

144. Plaintiff further intends to seek class certification under Federal Rule of Civil Procedure 23, as the deprivation of voting rights extended beyond Plaintiff and similarly impacted all SHU inmates at MDC Guaynabo. The class consists of all eligible voters who were held in the SHU at MDC Guaynabo during the November 3, 2024, gubernatorial election and were systematically denied access to vote due to Defendants' deliberate and coordinated suppression tactics.

145. Courts have recognized private causes of action in cases of systemic voter suppression, particularly where government actors conspired to deny eligible voters access to the ballot. Plaintiff's claim falls squarely within this framework, as Defendants' actions constituted a pattern of disenfranchisement designed to deprive an entire class of voters of their constitutional rights.

## VI.  CLASS ACTION ALLEGATIONS

146. Plaintiff **Nelson Torres-Delgado**, on behalf of himself and **all similarly situated individuals**, brings this action as a **class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure**. This

class action seeks declaratory and injunctive relief, as well as any further relief that the Court deems just and equitable, to address the **systematic disenfranchisement of SHU inmates** at **MDC Guaynabo** who were unlawfully deprived of their right to vote during the **November 3, 2024, Puerto Rican gubernatorial election**.

## A.    DEFINITION OF THE CLASS

147. The proposed class consists of; **All eligible voters who were confined in the Special Housing Unit (SHU) at MDC Guaynabo on or before November 3, 2024, and who were systematically denied access to voter registration, election materials, and the ability to cast a ballot due to the actions and omissions of Defendants.**

## B.    NUMEROSITY (FRCP 23(a)(1))

148. The **class is so numerous that joinder of all members is impracticable**. MDC Guaynabo's SHU holds **a significant number of inmates at any given time**, and many of them were **eligible voters under Puerto Rican law**.

149. Because Defendants **systematically applied the same policies and practices** to all SHU inmates, the **exact number of class members can be determined through discovery**, including **inmate rosters, voting**

registration records, and internal communications between Defendants and the Puerto Rico Election Commission.

## C.  COMMONALITY (FRCP 23(a)(2))

150.  There are **questions of law and fact common to all class members**, including but not limited to:

a)  **Whether Defendants had a constitutional and statutory obligation to ensure that SHU inmates were informed of their right to vote and provided access to the voting process.**

b)  **Whether Defendants engaged in a coordinated and systematic effort to suppress the voting rights of Plaintiff and similarly situated SHU inmates.**

c)  **Whether Defendants' conduct violated the First, Fifth, Fourteenth, and Fifteenth Amendments to the U.S. Constitution.**

d)  **Whether Defendants' actions constituted a violation of the Voting Rights Act, 52 U.S.C. § 20510.**

e)  **Whether Defendants' actions disproportionately impacted Puerto Rican inmates in SHU, constituting racial and status-based disenfranchisement.**

f)  **Whether Defendants intentionally waited until the last moment to obstruct SHU inmates from voting to prevent timely legal intervention.**

g)  **Whether injunctive relief is necessary to prevent further disenfranchisement of SHU inmates in future elections.**

## D.  TYPICALITY (FRCP 23(a)(3))

151.  Plaintiff's claims are **typical of the claims of all class members** because:

    a)    **Plaintiff was an eligible voter housed in SHU at MDC Guaynabo on November 3, 2024.**

    b)    **Plaintiff was subject to the same unlawful disenfranchisement policies and practices as all other class members.**

    c)    **Plaintiff, like all class members, was denied access to voter registration, election materials, and the ability to vote due to Defendants' unlawful actions.**

    d)    **The harm suffered by Plaintiff is the same harm suffered by all class members: the denial of a fundamental constitutional right.**

## E.   ADEQUACY OF REPRESENTATION (FRCP 23(a)(4))

152.   Plaintiff **will fairly and adequately represent the interests of the class**

because:

    a)    **Plaintiff seeks the same relief on behalf of himself and all class members—the enforcement of voting rights, a declaratory judgment, injunctive relief, and damages.**

    b)    **Plaintiff's interests are aligned with the interests of the class, as all members suffered from the same constitutional and statutory violations.**

    c)    **Plaintiff is represented by competent legal counsel with experience in civil rights and constitutional law litigation, who are fully committed to prosecuting this action to its conclusion.**

## F.   CLASS CERTIFICATION UNDER RULE 23(b)(2) – INJUNCTIVE RELIEF.

**153.** Class certification is appropriate under **Federal Rule of Civil Procedure 23(b)(2)** because:

a) **Defendants have acted or refused to act on grounds that apply generally to the class, making injunctive and declaratory relief appropriate for all class members.**

b) **Defendants' systemic and unconstitutional conduct has resulted in ongoing harm to class members, justifying court intervention.**

c) **An injunction requiring MDC Guaynabo to implement lawful voting policies for SHU inmates will benefit all class members and prevent future violations.**

## G.   RELIEF SOUGHT ON BEHALF OF THE CLASS

**154.**  Plaintiff, on behalf of himself and all similarly situated class members, seeks the following relief:

1) **A declaratory judgment that Defendants' actions violated the First, Fifth, Fourteenth, and Fifteenth Amendments, as well as the Voting Rights Act, 52 U.S.C. § 20510.**

2) **A permanent injunction ordering Defendants to implement policies ensuring that SHU inmates are given full access to the electoral process, including voter registration, election materials, and transportation to designated voting areas.**

3) **An order requiring Defendants to establish an independent oversight committee to ensure compliance with election laws in all future elections involving SHU inmates.**

4) **Compensatory damages to Plaintiff and class members for the emotional distress and harm caused by Defendants' actions.**

5) **Punitive damages against Defendants to deter future voter suppression efforts in federal correctional institutions.**

## H.  CONCLUSION

**155.** Plaintiff, on behalf of himself and all similarly situated class members, respectfully requests that this Court certify this case as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) and grant all appropriate relief to remedy the widespread constitutional and statutory violations suffered by Plaintiff and the class members.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, **Nelson Torres-Delgado**, individually and on behalf of **all similarly situated individuals**, respectfully requests that this Honorable Court grant the following relief:

## A.  **Declaratory Relief**:

**1.** Issue a declaratory judgment stating that Defendants' actions and omissions violated the constitutional and statutory rights of Plaintiff and all class members under:

1) 28 U.S.C. § 1343 (Civil Rights and Elective Franchise);

2) 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights);

    **3)**    52 U.S.C. § 20510 (Voting Rights Act); and

    **4)**    18 U.S.C. §§ 241 and 242 (Criminal Conspiracy and Deprivation of Rights).

**B.**   **Class-Wide Injunctive Relief**

    **1.**   **Issue an injunction requiring Defendants, in their official capacities, to:**

      **1)**    Implement and enforce voting access policies at MDC Guaynabo that ensure all eligible inmates, including those confined in the SHU, have full and meaningful access to the electoral process in all future elections.

      **2)**    Create and distribute clear protocols mandating accommodations for inmates housed in restrictive housing units, including SHU, to participate in elections.

      **3)**    Provide comprehensive training for all correctional officers, supervisors, and administrative staff on inmates' voting rights under federal and Puerto Rican law, ensuring compliance with election procedures.

      **4)**    Establish independent oversight mechanisms to monitor and enforce compliance with voting rights protections during future elections.

      **5)**    Enforce disciplinary action against staff who fail to comply with institutional policies safeguarding voting rights or who knowingly obstruct inmate participation in elections.

    **2.**   Enjoin Defendants from engaging in any future acts that obstruct the voting rights of Plaintiff and all class members at MDC Guaynabo or any other federal detention facility under their jurisdiction.

**C.**   **Class-Wide Compensatory Damages**:

   **1.**    Award compensatory damages in the amount of **$1,000,000** per individual class member to address:

      **1)**   Emotional distress, humiliation, and psychological harm caused by Defendants' voter suppression actions.

      **2)**   The irreparable harm caused by Plaintiff's and class members' disenfranchisement and exclusion from the democratic process.

      **3)**   The systemic and deliberate violation of class members' constitutional and statutory rights, resulting in the loss of their fundamental right to vote.

**D.**  **Class-Wide Punitive Damages**:

   **1.**    Award compensatory damages in the amount of **$2,000,000** per individual class member to address:

      **1.**   Punish Defendants for their willful, egregious, and intentional misconduct in suppressing class members' right to vote.

      **2.**   Deter Defendants and other prison officials from engaging in further unconstitutional and unlawful voter suppression in future elections.:

**E.**  **Nominal Damages**:

   **1.**    Award nominal damages to recognize the violation of Plaintiff's and class members' constitutional rights, even if no substantial harm is proven beyond disenfranchisement.

**F.**  **Attorney's Fees and Costs**:

**1.**    Award Plaintiff and Class Counsel reasonable attorney's fees, costs, and litigation expenses pursuant to **42 U.S.C. § 1988(b)**, which provides for the recovery of fees in actions enforcing civil rights laws.

**G.    Other Class-Wide Relief:**

**1)**    Grant any other relief this Court deems just, equitable, and appropriate, including:

**2)**    Orders ensuring the protection of voting rights for all inmates in federal custody.

**3)**    Oversight mechanisms to prevent systemic violations of constitutional and statutory rights in future elections, including independent federal election monitors for all future elections at MDC Guaynabo.

**H.    Affirmation of Class Members' Right to a Trial by Jury**

**1.**    Affirm Plaintiff's and all class members' right to a trial by jury under the Seventh Amendment of the United States Constitution to determine liability and damages.

**2.**    JURY DEMAND: Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all class members, demands a trial by jury on all issues so triable.

**I.    Affirmation of Justice:**

**1.**    Plaintiff seeks this relief to vindicate the fundamental rights guaranteed by the United States Constitution and federal law, to hold Defendants accountable for their egregious violations, and to ensure that no other individual in federal custody is denied their right to vote in the future.

## J.    REFERRAL FOR CRIMINAL INVESTIGATION (CLASS-WIDE BASIS)

Plaintiff, on behalf of himself and all similarly situated class members, respectfully requests that this Honorable Court formally refer this matter to the United States Department of Justice for criminal investigation and prosecution of Defendants under federal law.

Defendants' deliberate and systematic obstruction of class members' right to vote constitutes criminal violations of 52 U.S.C. § 20511, which imposes federal penalties for obstructing the electoral process, as well as violations of 18 U.S.C. § 241 and § 242, which criminalize conspiracies and willful deprivation of rights under color of law.

**Defendants' Criminal Conduct and Willful Voter Suppression**

Defendants knowingly engaged in a criminal conspiracy to suppress class members' voting rights by:

1.  Defendant ANGEL LUIS ADAN, Warden, MDC Guaynabo – As the highest-ranking official at MDC Guaynabo, Defendant Adan knowingly orchestrated and directed the suppression of SHU inmates' voting rights. Despite prior assurances to the Puerto Rico Election Commission (CEE) that all eligible inmates, including those in SHU, would be provided access to voter registration and the electoral process, Defendant Adan personally approved and enforced policies ensuring that SHU inmates,

including Plaintiff, would remain unaware of the election, unable to register, and physically barred from the designated voting area.

2.   Defendant AW HOWARD, Associate Warden Operations, MDC Guaynabo – Defendant Howard was responsible for overseeing institutional compliance with election procedures and actively participated in the conspiracy by issuing directives to subordinate officers to ensure that SHU inmates were excluded from the election process. Defendant Howard willfully ignored the legal requirements placed on MDC Guaynabo and instructed staff to remain silent about the election process, ensuring complete disenfranchisement of Plaintiff and all SHU inmates.

3.   Defendant AW RIVERA, Associate Warden Programs, MDC Guaynabo – Defendant Rivera was tasked with ensuring that MDC Guaynabo facilitated access to educational and civic engagement programs, including voting rights initiatives. Despite this legal duty, Defendant Rivera intentionally failed to implement or oversee election procedures, allowing Defendants under his supervision to block SHU inmates from receiving voter registration materials or accessing the designated voting area.

4.   Defendant JOSEAN NIEVES, Captain, Correctional Services Supervisor, MDC Guaynabo – Defendant Nieves was responsible for ensuring that all

correctional staff upheld the institution's obligations under federal and Puerto Rican voting laws. However, rather than enforcing compliance, Defendant Nieves actively participated in the suppression scheme, issuing directives to subordinate officers, including SHU Correctional Officers, to withhold all election-related information and prevent SHU inmates from being transported to the voting area.

5. Defendant LT. OJEDA, SHU Lieutenant in Charge, MDC Guaynabo – Defendant Ojeda played a key role in executing the conspiracy by directly instructing SHU correctional staff to refuse any requests for election-related information from SHU inmates, ensuring that no inmate in SHU would have knowledge of the election or access to voting procedures. Defendant Ojeda's actions directly contributed to the systemic disenfranchisement of over 100 SHU inmates.

6. Defendant LT. SPECIAL ACTIVITIES, MDC Guaynabo – This Defendant was responsible for coordinating external programming and activities for inmates, including elections. Rather than ensuring that SHU inmates were granted access to the voting process, Defendant actively participated in the suppression effort by failing to coordinate transport of eligible SHU inmates to the designated voting area and by concealing election procedures from them.

7.    Defendant LT. OPERATIONS, MDC Guaynabo – Defendant Operations Lieutenant played an integral role in ensuring that Defendants' illegal directives were enforced at the operational level. This Defendant directly instructed correctional staff to ignore requests for election materials, actively prevented SHU inmates from being transported to the voting area, and ensured that Plaintiff and similarly situated SHU inmates remained entirely unaware that voting was taking place.

8.    Defendants SHU CORRECTIONAL OFFICERS ONE THROUGH SIX, MDC Guaynabo – These Defendants were the primary point of contact for SHU inmates and were responsible for relaying critical institutional information, including election procedures, to inmates in their custody. Rather than fulfilling this duty, Defendants SHU Correctional Officers One through Six deliberately followed illegal orders issued by their supervisors, intentionally withholding all election-related information from Plaintiff and class members, ensuring that no SHU inmate was given the opportunity to vote.

**Criminal Referral Justification & Request for Immediate DOJ Investigation**

The criminal implications of Defendants' actions under 52 U.S.C. § 20511 warrant immediate referral to the United States Department of Justice. Plaintiff

requests that this Court take judicial notice that Defendants' collective conduct constitutes willful voter suppression punishable under federal law, carrying criminal penalties of up to five years imprisonment per violation.

In addition to their violations of 52 U.S.C. § 20511, Defendants also conspired to suppress class members' voting rights in violation of 18 U.S.C. §§ 241 and 242, which impose severe criminal penalties on government officials who conspire to deprive individuals of constitutional rights or act under color of law to deny them their federally protected rights.

Plaintiff, on behalf of himself and all class members, respectfully requests that this Court formally refer this matter to the United States Department of Justice for criminal investigation and prosecution under the following statutes:

1. 52 U.S.C. § 20511 – For knowingly and willfully depriving Plaintiff and similarly situated inmates of a fair and impartial election process through fraud, coercion, and obstruction.

2. 18 U.S.C. § 241 – For engaging in a criminal conspiracy to suppress Plaintiff's and class members' right to vote through a coordinated effort to block SHU inmates from accessing the electoral process.

3. 18 U.S.C. § 242 – For willfully depriving Plaintiff and class members of their constitutional right to vote under color of law through an intentional and systematic obstruction of the election process.

## **CONCLUSION**

Defendants must be held accountable for their criminal conduct, as their actions represent a flagrant and egregious attack on the democratic rights guaranteed by the United States Constitution and federal law. Their deliberate efforts to suppress Plaintiff's and similarly situated SHU inmates' voting rights demand immediate federal investigation and prosecution to prevent further violations and to uphold the integrity of the electoral process.

**RESPECTFULLY SUBMITTED**, In San Juan, on this the 31st  day of January, 2025

**Plaintiff's Attoney,**

**/s/ Edwin Prado-Galarza**
Edwin Prado-Galarza, Esq.
Attorney at Law
Prado Núñez & Asociados P.S.C.
403 Del Parque St. Suite 8
San Juan, PR 00912
T. (787) 977-1411
F. (787) 977-1410
Pradolaw10@gmail.com
USDCPR No. 208804